S. J. MILLIGAN, ADMR. ETC. *v.* GREENEVILLE COLLEGE,
*et al.**

(*Nashville.* December Term, 1927.)

Opinion filed February 2, 1928.

1. WILLS. ABBREVIATION. INTENTION OF TESTATOR. MISNOMER.

Where the beneficiary in a will is designated by initials which are commonly used to designate a well known fraternal organization and the intention of the testator appears, such designation will be read so as to give effect to the bequest. (Post, p. 499.)

Citing: Bank v. Burke, 41 Tenn. (1 Cold.), 623; Trustees of Mc-Minn Academy v. Reneau, 32 Tenn. (2 Swan.) 94; State v. Smith, 84 Tenn. (16 Lea), 662; Carson v. Carson, 115 Tenn. (7 Cates), 37.

2. WILLS. TRUST. WORDS CONSTRUED.

Where there is no element of perpetuity about a trust the bequest in the will will not be closely scrutinized. (Post, p. 501.)

Citing: Johnson v. Johnson, 92 Tenn. (8 Pick.), 559; Carson v. Carson, 115 Tenn. (7 Cates), 37.

3. WILLS. TRUST.

A devise and bequest being made directly to a corporation which is charitable, the trust need not be set out so specifically and definite as if made to individuals in order to make them valid. (Post, p. 502.)

Citing: Carson v. Carson, 115 Tenn. (7 Cates), 37; Perry on Trusts, sec. 719.

4. WILLS. LEGACIES. INTENTION OF TESTATOR.

When a legacy or (under our law) a devise lapses, turns out invalid, or is renounced, such bequest or devise passes under a residuary clause, unless some other provision is made with respect to the bequest or devise in event of its failure, or unless from the entire will it is manifestly the intention of the testator to exclude it from the residuary clause. (Post, p. 504.)

Citing: Ewell v. Sneed, 136 Tenn. (9 Thomp.), 602; Bradford v. Leake, 124 Tenn. (16 Cates), 313; Reeves v. Reeves, 73 Tenn. (5 Lea.), 644; 28 R. C. L., 341; Fite v. Beasley, 80 Tenn. (12 Lea.), 328.

**5. WILLS. CONSTRUCTION. TESTATOR'S INTENTION.**

Where the testator undertook to describe the residue of his estate and indicated what he meant by residue by describing real property "and my personal property of every kind and character" there was no intention evinced that a farm described in a previous clause of the will which was sold by the testator after the execution of the will, and shows no intention on the part of the testator that the proceeds of this farm should pass under the residuary clause. Post, p. 506.)

· Citing: Perry v. High, 40 Tenn. (3 Head.), 350.

**6. WILLS. CONSTRUCTION.**

In a will devising a farm to an educational institution on condition that "it is not to be mortgaged or sold, and when it ceases to be used for the purposes herein specified, or shall be abandoned by said college, said land is to go to my heirs in fee," the sale of the farm by the testator accomplishes an ademption of the alternative devise to the heirs as well as the primary devisee, and all proceeds of said farm pass as intestate property. (Post, p. 506.)

**7. WILLS. CONSTRUCTION. TESTATOR'S INTENTION.**

Where it appears that the testator owned some small pieces of real estate not disposed of by the will, such small parcels of real estate do not pass under a residuary clause specifically describing certain real estate owned. (Post, p. 507.)

**8. WILLS. HOLOGRAPHIC WILL. LETTER. REVOCATION.**

A letter written by the testator to his lawyer subsequent to the execution of the will indicating a desire to change certain provisions therein is not testamentary in character and not entitled to probate as a holographic will, but such letter being in the record without objection may be looked to to strengthen the impression of this Court as to the construction of the will. (Post, p. 507.)

*Headnotes 1. Charities, 11 C. J., section 46; 2. Charities, 11 C. J., section 12; 3. Charities, 11 C. J., section 46; 4. Wills, 40 Cyc., p. 1945; 5. Wills, 40 Cyc., p. 1948; 6. Wills, 40 Cyc., p. 1948; 7. Wills, 40 Cyc., p. 1945; 8. Certiorari, 11 C. J., section 343.

FROM GREENE.

Appeal from the Chancery Court of Greene County.—
Hon. S. E. MILLER, Judge.

SHOUN, SWINGLE & MILLIGAN, for complainant.

J. E. BIDDLE, SUSONG, SUSONG & PARVIN and NOAH W.
COOPER, for A. F. & A. M. Home.

MR. CHIEF JUSTICE GREEN delivered the opinion of the
Court.

This case is before us on *certiorari* to the Court of Ap-
peals and presents questions as to the validity and con-
struction of certain clauses of the will of W. T. Clem, de-
ceased.

Clem was a colored man who lived near Greeneville and
had accumulated considerable property.  He was prom-
inent in the Masonic work of his race and had held high
positions in the Grand Lodge of Tennessee of the An-
cient, Free and Accepted Masons.

The charter of the aforesaid Grand Lodge is filed
with the record and the Grand Lodge is authorized
among other things to operate a Widows' & Orphans'
Home.  The proof shows that the Grand Lodge has for
many years operated such a home near Nashville.  Title
to this property stands in the name of the Trustees of
the Grand Lodge, the funds of the home are kept and
disbursed by the Treasurer of the Grand Lodge under
supervision of officers of the Grand Lodge, and the home,
generally speaking, is carried on as part of the charit-
able or benevolent work of the said Grand Lodge.

The will of W. T. Clem contains the following clauses,
material to the inquiry before us:

"Third. I give and devise to the Greeneville College,
an institution established for the higher intellectual and
moral education of the colored youth of the land, and of
which my Father George W. Clem, was one of the incor-
porators, my farm, situated in the suburbs of the Town

of Greeneville, in the tenth Civil District of Greene County, Tennessee, and on which I now live, subject to the conditions, limitations, and charges, hereinafter specified, same to be used by said College for agricultural and industrial training purposes. Said land is not to be mortgaged or sold, and when it shall cease to be used for the purposes herein specified, or shall be abandoned by said College, said land is to go to my heirs in fee; but this gift and devise in the hands of Greeneville College, or my heirs, is made subject to a charge, in favor of Mrs. Minnie Toomey, of one-fourth of the proceeds of the land for her maintenance and support, during her natural life, and further said Minnie Toomey is to have the use and control during her life, of the homestead previously assigned to her mother, but not to include such lands as were assigned to her said mother as dower, and she to have, also, the right to pasturage, with shelter, on the other lands herein devised, for two milk cows, should she desire it.

"Fifth. It is my will, and I direct that my property known as the Brick Kiln Property, situated in West Greeneville, together with all of my personal property, shall be sold by my executor, the proceeds thereof to be applied to payment of the expenses and bequests hereinbefore designated and made, and as below directed.

"Sixth. I give and bequeath to the A. F. & A. M. Masonic Widows' & Orphans' Home, at Nashville, Tennessee, to be used as said Home shall deem best, but subject to a charge that said Home shall keep in proper and respectful repair and condition the burial lot of myself and my father's family in the rear of the M. E. Church, and near the Greeneville College, Greeneville, Tennessee, all the residue of my estate, be the same proceeds of said Brick Kiln Property or of my personal estate of every kind and character."

The bill herein was filed by the Administrator with the will annexed for a construction of the will, bringing in all necessary parties. The cause regularly came to issue and some proof was taken. The Chancellor was of opinion that the sixth clause of the will, above set out, undertaking to make provision for the Widows' & Orphans' Home was invalid—that it was an abortive effort to create a charitable trust. The Court of Appeals was of contrary opinion and upheld the validity of said clause. The petition for *certiorari* filed by the heirs and next of kin of the deceased assails this conclusion of the Court of Appeals and presents the further question, if the sixth clause of the will is valid, as to what passes under said clause.

The contention of the heirs and next of kin is that "the A. F. & A. M. Masonic Widows' & Orphans' Home" is unincorporated and incapable of taking such bequest; that no trustee is interposed; and that moreover the trust is too indefinite to be administered, under our cases, as a valid charitable trust. All our decisions are cited from *Greene* v. *Allen,* 24 Tenn. (5 Humph.), 170, down to *Ewell* v. *Sneed,* 136 Tenn., 602, in which the earlier cases are reviewed. The Court has been favored with elaborate briefs and arguments referring to many authorities in other States. We think, however, the questions presented are ruled by previous decisions of this Court and it will not be necessary to look outside.

(1) The gift in the sixth clause is to "the A. F. & A. M. Masonic Widows' & Orphans' Home at Nashville, Tennessee." The proof shows that "A. F. & A. M." is a common abbreviation for *Ancient, Free and Accepted Masons,* that such abbreviation is generally used and understood. The designation of the beneficiary may thus be read as the Ancient, Free & Accepted Masons' Ma-

sonic Widows' & Orphans' Home, that is to say, the Widows' & Orphans' Home of the Ancient, Free & Accepted Masons. This is equivalent to a bequest to the Ancient, Free & Accepted Masons for the benefit of the Masonic Widows' & Orphans' Home at Nashville, Tennessee, for as before stated, the conduct of the Masonic Widows' & Orphans' Home at Nashville, Tennessee, is but a department or branch of the charitable or benevolent work of the Grand Lodge of Free & Accepted Masons.

We think, therefore, the intention of the testator was clear, that his plainly expressed purpose was to make this bequest to a branch or department of a legally organized charitable corporation, capable of taking and holding property, to-wit, the Widows' & Orphans' Home of the Grand Lodge of Free & Accepted Masons.

The case then falls under *Bank* v. *Burke,* 41 Tenn. (1 Cold.), 623. A note was made payable to the President and Directors of the branch Bank of Tennessee at Shelbyville. It seems that the branch bank could not sue in its own name and suit was brought on the note by the President and Directors of the Bank of Tennessee, the parent institution. The Court held that the suit could be maintained as brought and said:

". . . The misnomer of a corporation in a grant or obligation does not destroy or defeat a grant or obligation, nor prevent a recovery upon it in the true name, if the same be shown by proper and apt averments and proof."

In *Trustees of McMinn Academy* v. *Reneau,* 32 Tenn. (2 Swan), 94, it was held that the misnomer of a corporation furnished no ground of objection to the validity of a bond. The bond ran to "Trustees of McMinnville Academy in Hawkins County." The true name of the corporation was "McMinn Academy." Parol evidence

was admitted to explain and show the intention of the parties.

In *State* v. *Smith,* 84 Tenn. (16 Lea), 662, there was a gift of land and money to the Trustees of the free schools of Shelby County for the purpose of erecting a college on the land. There were no such Trustees but the Court held that the gift was intended for the Directors of the First School District of Shelby County where the testator lived and the land was located.

To the same effect see *Carson* v. *Carson,* 115 Tenn., 37.

So we conclude from the proof that the intention of this testator was to make the aforesaid bequest to the Grand Lodge of Free & Accepted Masons of Tennessee for the benefit of the Widows' & Orphans' Home operated by it at Nashville, and we are of opinion that the misnomer of the corporation does not invalidate the gift, since the proof makes the intention of the will quite clear.

*(2)* It was evidently not the design of the testator to set up a charitable trust in the ordinary meaning of those words. There was no direction that the fund given should be preserved and the income only applied for the benefit of the Widows' & Orphans' Home. The fund is "to be used as said Home shall deem best" and it may all be used in a lump for any need of the Home, if those in control of the Home think proper. There is accordingly no element of perpetuity about this trust and for this reason the bequest will not be so closely scrutinized.

Having determined that it was the intention of the testator to make this bequest to the Grand Lodge of Free & Accepted Masons of Tennessee for the benefit of the Widows' & Orphans' Home at Nashville, the bequest is definite enough and the case is clearly ruled by *Johnson* v. *Johnson,* 92 Tenn., 559, and *Carson* v. *Carson,* 115 Tenn., 37.

In *Johnson* v. *Johnson,* it was said:

"There is a broad distinction between a gift direct to a charity or charitable institution already established, and a gift to a trustee to be by him applied to a charity. In the first case, the Court has only to give the fund to the charitable institution, which is merely a ministerial or prerogative act; but in the latter case the Court has jurisdiction of the trustee, as it has over all trustees, to see that he does not commit a breach of his trust or apply the funds in bad faith to purposes foreign to the charity. 2 Perry on Trusts, Sec. 719."

*(3)* In *Carson* v. *Carson,* the gift was intended for a body corporate and politic by the name of the "Trustees of the General Assembly of the Cumberland Presbyterian Church," "to be held and used by them as Trustees only in such manner as to best promote the interests of christianity in the fields occupied by the said Cumberland Presbyterian Church."

It was insisted in that case that this provision of the will was too indefinite to be sustained. Answering this objection the Court said:

"The devise and bequest being made direct to a corporation which is charitable, the trusts need not be set out so specifically and definitely as if made to individuals, in order to make them valid.

"The reason is that a corporation organized for charitable purposes has these purposes and trusts set out in its charter and articles of foundation, so that the trusts are thus made certain and will control; due deference being paid to the directions of the testator, if any are given. But no trusts in such case need be declared, as they are set out in the charter and articles of foundation.

"To illustrate: If a bequest be made to the Vanderbilt University or Cumberland University by name, the

trusts to which the fund is to be applied need not be further specified by the grantor, since these are well known charitable corporations, whose objects, purposes, and trusts are fully set forth in their charters and other instruments of foundation.

"But if a devise or bequest is made to individuals, as trustees, then the trusts must be declared in the instrument giving the property.

"We are of opinion that the devise and bequest in this case being made, as we have before held, to the corporation of the General Assembly of the Cumberland Presbyterian Church, that corporation will hold it under its charter and articles of foundation—due regard being paid to the direction of the testatrix, as far as given— and beyond that under the general trusts under which that corporation holds all its property."

So we are of opinion that the bequest made in clause six of the testator's will goes to the Grand Lodge of the Ancient, Free & Accepted Masons of Tennessee, to be held by that corporation under its charter and articles of foundation, due regard to be paid by it to the direction of the testator that said funds shall be used for the benefit of the Widows' & Orphans' Home at Nashville, Tennessee, as far as such direction goes, and beyond that under the general trusts under which said corporation holds all its property, if the direction is not comprehensive.

The question then arises as to what property passes under item six of the will. It will have been observed that by item three of the will the testator gave to Greeneville College his farm situated in the suburbs of the town of Greeneville subject to certain charges in favor of one Minnie Toomey. This will was executed several years before the testator's death and some time prior to his

death he sold the entire farm, taking money and notes therefor, converting this real estate into personalty. It is conceded by all parties that this action of the testator prior to his death worked an ademption of this devise. The question is whether the proceeds of the land pass under the residuary clause, item six heretofore discussed.

*(4)* It is quite true as a general proposition that when a legacy or (under our laws) a devise lapses, turns out invalid, or is renounced, such bequest or devise does pass under a residuary clause. *Ewell* v. *Sneed,* 136 Tenn., 602; *Bradford* v. *Leake,* 124 Tenn., 313; *Reeves* v. *Reeves,* 73 Tenn. (5 Lea), 644. This is true unless some other provision is made with respect to the bequest or devise in the event of its failure, or unless, from the entire will, it was the manifest intention of the testator to exclude it from the residuary clause. 28 R. C. L. 341.

In *Reeves* v. *Reeves, supra,* the Court said:

"The special exception from a residuary bequest of certain property and giving it to another legatee, will not prevent the excepted property from going to the residuary legatee, if the excepting legacy fail by an event analogous to a lapse, or in consequence of the indefinite manner in which the trust in favor of other parties was expressed. *Evans* v. *Jones,* 2 Coll. C. C., 516; *James* v. *Irving,* 10 Beav., 276; *Bernard* v. *Minshull,* Johns. (Eng. Ch.), 276. In the last of these cases the authorities are reviewed by Vice-Ch. WOOD, now Lord HATHERLEY, who says: 'All you have to consider is, whether the property is excepted in order to take it away, under all circumstances and for all purposes, from the persons to whom the rest of the property is given, or whether it is excepted merely for the purpose of giving it to somebody else. If the latter, and the gift to that somebody else fails, the donees of all except this property are entitled to take the whole.'"

In *Fite* v. *Beasley,* 80 Tenn. (12 Lea), 328, the Court used this language:

"A general residuary devise or bequest would carry to the legatee not only the personal estate which the testator does not attempt to dispose of by his will, but also such personalty as had not effectually been disposed of, in which class would fall money bequeathed for a purpose void in law: *Reeves* v. *Reeves,* 5 Lea, 655. And the mere enumeration of certain particular property in connection with the general words of disposition will not necessarily limit the comprehensive import of the general words: *Williams* v. *Williams,* 10 Yer., 20; *Jarnagin* v. *Conway,* 2 Hum., 50; *Edmondson* v. *Edmondson,* 1 Tenn. Ch., 563. It is otherwise, however, if in the residuary clause there is an enumeration of all the property intended to be given: *Perry* v. *High,* 3 Head, 350. Or if the will plainly discloses a different intent: 1 Jar. Wills, 762. The question is one of the intent of the testator in view of the whole will, and the language of the residuary clause.

"The presumption is that the testator did not intend to die intestate as to any portion of his property when he undertook to make a complete will, and excepts the special legacy out of the residum only for the benefit of the legatee. The law, consequently, requires the use of words clearly limiting the gift of the residue, and showing in express terms an intention to exclude such portions of his estate as may fail to pass under previous clauses of the will, in order to take it out of the general rule above stated: *King* v. *Woodhull,* 3 Edw., 79. The principle on which the court acts is plain enough, the only difficulty being in its application to particular cases: *Peay* v. *Barber,* 1 Hill Ch., 95."

Applying this principle and considering the whole will we think that the testator quite clearly showed his intention that such portion of his estate as was represented by his farm described in item 3 should not pass under the residuary clause, if the devise contained in item three failed.

It was expressly provided in item three that if the land devised should "cease to be used for the purposes herein specified, or shall be abandoned by said College, said land is to go to my heirs in fee." This makes it plain that the testator preferred that the land should go to his heirs rather than for the benefit of the residuary legatee, the Widows' & Orphans' Home, in the event it should not be used for the benefit of Greeneville College.

(5) This view is strengthened by the circumstance that the residuary clause in a measure undertook an enumeration of the property intended to be given thereunder. This clause referred to the property passing by its terms as "all the residue of my estate, be the same proceeds of said Brick Kiln property or of my personal estate of every kind and character."

The testator thus undertook to describe the residue of his estate and indicate what he meant by the residue, namely the proceeds of his Brick Kiln property and his personal estate. He certainly did not intend at the time the will was made for the Widows' & Orphans' Home to have his farm. Even though that farm was afterwards converted into personalty, we are satisfied it was his desire that the proceeds should go to his heirs, in case the gift to Greeneville College failed, rather than pass under the residuary clause. *Perry* v. *High,* 40 Tenn. (3 Head), 350.

(6) While under *Ford* v. *Cottrell,* 141 Tenn., 169, the sale of the farm accomplished an ademption of the alter

native devise to the heirs as well as the primary devise to Greeneville College contained in item three, item three can still be looked to as evincing the purpose of testator to withdraw the farm and, in our opinion, its proceeds as well from the residuary clause, and such proceeds must accordingly pass as intestate property.

*(7)* It appears from the record that there are some small pieces of real estate which the will apparently does not dispose of which likewise should pass as intestate property. We think these small parcels of real estate do not pass under the residuary clause because, as heretofore stated, the testator undertook to explain what he meant by the residue of his estate and indicated as composing the residue only the proceeds of his Brick Kiln property and all his personal estate.

*(8)* We are strongly confirmed in the belief that we have correctly interpreted the testator's desires by a letter that appears in this record as part of the proof without objection. This letter apparently expresses the testator's wishes with respect to all his property, refers to the will previously made and here under consideration and proposes material changes therein. This letter was written by the testator some time before his death to his Attorney at Greeneville. For some reason the new will was never drawn. The letter follows:

"Greeneville, Tenn.

"Feb. 10, 1922.

"Dear Sir:

"I have been sick for the past 60 days and I want my will changed, you can write it up and I will come in and sign it when weather gets better.

"Where it speaks of fathers and mothers stones leave that out as I have them up.

"All property except home is to be sold and proceeds settled as stated to settle indebtedness as stated in the other one.

"Proceeds  to go to one thousand dollars each for Ruth and George Clem, five hundred dollars Greeneville College, two hundred dollars for order  of Eastern Star #17 to be given to Widows' & Orphans' Home, Nashville, Tennessee.

"The remainder to Minnie D. Clem and George Austin Toomey, including homestead personal property.

"After thinking over the matter I have changed my mind.

"Respectfully,
"(Signed) W. T. CLEM."

The Chancellor held that this letter was not testamentary in character and not entitled to probate as a holographic will.  There was no exception to this ruling. The question as to whether or not the letter, although not a testamentary paper, amounted to a revocation of the will was not raised in the lower Courts and no such question is presented to us on petition for *certiorari* and cannot be considered by us.  Nevertheless the letter being in the record without objection strengthens our impression that the construction we have given the will is more in accord with testator's wishes as expressed in the will than the construction given to said will by the Court of Appeals.

Modified as indicated the decree of the Court of Appeals will be affirmed, and this cause remanded to the Chancery Court of Greene County for further proceedings in accordance with this opinion.

Petition to rehear filed and denied.